STATE OF MAINE                       BUSINESS & CONSUMER DOCKET

CUMBERLAND, ss.                       DOCKET NO. CV-19-51

| | |
|---|---|
| HUTCHINS MOTORS, INC. *d/b/a* O'CONNOR MOTOR CO., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS**
| BWS MANUFACTURING LTD., | ) ) |
| Defendant. | ) |

        Plaintiff Hutchins Motors, Inc (d/b/a/ O'Connor Motor Co.) ("O'Connor") brought a complaint against Defendant BWS Manufacturing LTD. ("BWS") for the wrongful termination of a Distribution Agreement in violation of the Maine Franchise Act. BWS responded with a Motion to Dismiss for failure to state a claim, s*ee* M.R. Civ. P. 12(b)(6), and that Motion is now pending before the Court. The Court heard oral argument on December 5, 2019. BWS contends O'Connor has failed to satisfy Maine's pleading standard, and has failed to state a claim under the Maine Franchise Act 10 M.R.S. §§ 1361-1370 (2018). For the reasons discussed below, Defendant's motion to dismiss is DENIED.

## STANDARD OF REVIEW

        In reviewing a motion to dismiss under Rule 12(b)(6), the Court "consider[s] the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp*., 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id*. (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to

relief under any set of facts that he might prove in support of his claim." *Id*. The legal sufficiency of a complaint challenged pursuant to M.R. Civ. P. 12(b)(6) is a question of law. *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141.

## BACKGROUND

Considering the facts in the complaint as admitted, and construing the facts in the light most favorable to O'Connor, the Court makes the following findings solely for the purpose of deciding the Motion to Dismiss.

On October 21, 2014 Plaintiff O'Connor Motor Co. ("O'Connor") entered a Distribution Agreement with BWS Manufacturing. Pursuant to the Agreement, O'Connor was to act as the sole dealer of BWS goods in Maine and was responsible for developing and expanding the market for BWS goods across the state. The Distribution Agreement had an initial twelve-month term, and was renewable if a mutually agreeable sales figure was reached. The Agreement was renewed each year, with the most recent renewal occurring in October 2018. BWS retained a right to terminate the Agreement if they believed a distributor had ceased or failed to provide full and proper distribution of BWS goods in the territory for which they were responsible. However, O'Connor performed as required under the Agreement.

On May 2, 2019, O'Connor received a letter from BWS' counsel denying the existence of the Agreement and seeking to terminate the business relationship in favor of a competitor, Hale Trailer. On May 15, 2019 O'Connor received a second letter officially terminating the business relationship between it and BWS. Nevertheless, BWS continued to process orders for O'Connor until July 12, 2019 when BWS finally ceased filling new orders and directed O'Connor to contact Hale Trailer for any future orders.

**DISCUSSION**

**I.      O'Connor Sufficiently Pleads Franchise Relationship with BWS**

All franchise agreements in Maine are subject to the Maine Franchise Act. 10 M.R.S. § 1364 (the "MFA"). The MFA aims to prevent manufacturers from engaging in certain "unfair methods of competition and unfair and deceptive practices" in franchise relationships. *Oliver Stores v. JCB, Inc.*, 2012 WL 4755378, at *2 (D. Me. 2012) (citing 10 M.R.S.A. § 1363(3)). O'Connor alleges their Distribution Agreement with BWS established a franchise as defined by the MFA.

According to the MFA, a Franchise is "an oral or written arrangement for a definite or indefinite period pursuant to which a manufacturer grants to a dealer or distributer of goods a license to use a trade name, trademark, service mark, or related characteristic and in which there is a community of interest in the marketing of goods and related services […]" 10 M.R.S. § 1361(3). Thus, to be considered a "franchisee", O'Connor must demonstrate: 1) it was granted a license to use a tradename, trademark, service mark, or related characteristic, and 2) the existence of a community of interest. *Id.*

Maine is a notice pleading state. Notice pleading requires that a complaint give "fair notice of the cause of action" by providing a short and plain statement of the claim showing that the pleader is entitled to relief. *Burns v. Architectural Doors and Windows*, 2011 ME 61, ¶ 16, 19 A.3d 823 (citing M. R. Civ. P. 8(a)(1)).[1] A complaint need not identify the particular legal theories that will be relied upon, but it must describe "the essence of the claim and allege facts sufficient to demonstrate that the complaining party has been injured in a way that entitles him or her to relief." *Burns* at ¶ 17 (citing *Johnston v. ME. Energy Recovery Co.*, 2010 ME 52, ¶ 16, 997 A.2d 741).

---

[1] The Court rejects BWS's argument that this Court should apply the pleading standards developed by federal courts interpreting the Federal Rules of Civil Procedure.

In this case, O'Connor has pled sufficient facts to proceed on its claims under the MFA. O'Connor asserts as a matter of fact that it is a dealer and franchisee within the meaning of the MFA. (Pl.'s Compl. ¶ 52.) O'Connor has also attached the Distribution Agreement to the complaint as Exhibit A.2 Section 6 of the Distribution Agreement is titled "Marketing Responsibilities and Trade Names." This section allows O'Connor to use the name "BWS Manufacturing Ltd., 'BWS' or any registered trade name or trademark owned by BWS" in the distributor's promotional materials after receiving approval from the company. Construed in the light most favorable to O'Connor, these allegations are sufficient to satisfy the license requirement.

O'Connor has also adequately pleaded facts to establish the existence of a community of interest. O'Connor asserts that the market for BWS' goods was expanded in Maine due to their efforts and their sales network. (Pl.'s Compl. ¶ 5.) Likewise, O'Connor asserts it invested significant time, goodwill, and capital to purchase inventory from BWS to develop and expand this market. (Pl.'s Compl. ¶ 29.) According to the Distribution Agreement, O'Connor is required to purchase its products exclusively from BWS and agrees to work with BWS in sales and product design to compete against competitors. (Pl.'s Ex. A § 4(a).) The Agreement tasks O'Connor with developing the Maine market for BWS' goods to its full potential. *Id.* at § 6(a). The term "community of interest" is undefined in the MFA, but O'Connor has sufficiently pled facts at this stage of the proceeding that entitle it to relief under some legal theory.

---

2 The parties' Distribution Agreement states: "This Agreement shall be governed and interpreted in accordance with the laws of the Province of New Brunswick." (Pl.'s Ex. A, ¶ 19.) However, O'Connor's complaint goes beyond the language of the Agreement, and the parties agree Maine Law applies to the analysis under the MFA.

Accordingly, the facts as pled by O'Connor are sufficient under Maine's notice pleading standard to give fair notice of the cause of action, and viewed in the light most favorable to O'Connor, the facts establish the existence of a franchise relationship.

## II. O'Connor Alleges Facts Sufficient to State a Claim for Breach of the Maine Franchise Act

Any franchise agreement (oral or written), or action pursuant to an agreement, that violates the MFA is "deemed against public policy and is void and unenforceable." 10 M.R.S. 1368. In terminating the Distribution Agreement, O'Connor asserts BWS violated the MFA, particularly 10 M.R.S. § 1363(C), which prohibits the termination of, or failure to renew or continue, any franchise relationship without notice, good faith, and good cause. In response, BWS asserts that the initial twelve month term of the Distribution Agreement ended on October 21, 2015, and was not renewed. In support of this assertion BWS points to the Distribution Agreement's language. The Agreement states: "unless sooner terminated, this agreement shall remain in force for an initial period of twelve months from the Commencement Date and shall continue in force for that period unless and until terminated by either party." (Pl.'s Ex. A § 16(b).) Thus, BWS asserts, they were unable to breach an agreement that had long since expired.

Despite the Distribution Agreement's language regarding the initial term, O'Connor's complaint alleges that, "most recently, the Agreement was renewed in October 2018", and remained in force until at least October, 2019. (Pl.'s Compl. ¶ 18.) The Court must consider facts alleged in the complaint as if they are admitted. O'Connor alleges the Distribution Agreement has been renewed annually, as recently as October 2018. Accordingly, for the purpose of BWS' motion to dismiss, the Court must treat the Distribution Agreement as if it has been renewed as alleged by O'Connor and was still in effect at the time the complaint was filed.

According to the MFA, a party to a franchise agreement cannot terminate the agreement without providing proper notice. 10 M.R.S. § 1363. Additionally, the termination must be in good faith, and for cause. *Id*. To act in good faith under the MFA, the terminating party must display "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." 10 M.R.S. § 1361(7). Meanwhile, if a termination is based on a breach of performance standards, it is unlawful for a franchisor to terminate an agreement for good cause without providing the franchisee a reasonable opportunity to make good faith efforts to carry out any reasonable performance criteria established by the franchisor and communicated to the franchisee. 10 M.R.S. § 1363(3)(c). Franchisors may not engage in actions that are arbitrary, in bad faith, or unconscionable and that cause damage to a franchisee or the public. 10 M.R.S. § 1363(1).

O'Connor alleges facts that, accepted as true, establish a claim under the MFA. First, O'Connor contends it did not receive adequate notice of the termination of their agreement. According to the MFA notice must be sent via registered, certified, or other receipted mail. 10 M.R.S. § 1366. O'Connor asserts BWS did not comply with this requirement. Second, O'Connor alleges BWS never indicated it was deficient in developing and expanding the market for BWS goods in Maine. Conversely, O'Connor asserts it faithfully performed their obligations under the Agreement and were the driving force behind BWS' expansion in Maine. Thus, O'Connor's position is the Agreement was not terminated for cause. Finally, O'Connor alleges the wrongful termination occurred when BWS was sold to a new owner who initially denied the existence of the agreement altogether before terminating it in favor of one of O'Connor's competitors. (Pl.'s Compl. ¶ 33, 37.) O'Connor alleges these actions were taken "with the aim of wrongfully depriving [them] of the fruits of its efforts and status as a franchisee of BWS in Maine. (Pl.'s

6

Compl. ¶ 38.) Therefore, O'Connor contends BWS acted in bad faith. Plaintiff alleges facts that, accepted as true, establish a claim under the MFA. According to the MFA, any franchisee that suffers damages due to a violation of the MFA may bring an action for injunctive relief, as well as recover damages arising from such violations. 10 M.R.S. 1362; *See Oliver Stores.,* 2011 WL 6888640, at *5.

## CONCLUSION

O'Connor's complaint sufficiently alleges facts, when viewed in the light most favorable to its case, sufficient to satisfy the requirements of Maine's notice pleading standard, and to state a claim under the Maine Franchise Act. In its complaint, O'Connor pleads the elements and related facts required to establish the existence of a franchise agreement. Further, Plaintiff alleges facts that, taken as true, establish its franchise agreement with Defendant was terminated without proper notice, without good cause, and in bad faith. For all these reasons, BWS's motion to dismiss is DENIED.

SO ORDERED.

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this Order by reference on the docket for this case.

Dated:  <u>December 16, 2019</u>                    _____/s_____

Michael A. Duddy
Judge, Business and Consumer Court